IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LORIE ANNE WINDSOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 1:15-cv-391-GMB |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorie Anne Windsor filed this action on June 3, 2015, seeking judicial review of a final adverse decision of the Commissioner of Social Security denying her applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Doc. 1. The case is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the entry of a final judgment by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and Rule 73.1 of the Local Rules for the United States District Court for the Middle District of Alabama. Docs. 9 & 10. Based upon a review of the parties' briefs, the evidentiary record, and the relevant authority, the court finds that, for the reasons explained below, the Commissioner's decision is due to be AFFIRMED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. No further action needs to be taken to continue this lawsuit pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.

## I.  STANDARD OF REVIEW

The court reviews a social security case to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted).  Indeed, the court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

"Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Jones ex rel. T.J.J. v. Astrue*, 2011 WL 1706465, at *1 (M.D. Ala. May 5, 2011) (citing *Lewis*, 125 F.3d at 1440).  The court must scrutinize the entire record to determine the reasonableness of the decision reached. *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  "If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as a finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision." *Jones*, 2011 WL 1706465, at *2 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)). The court will reverse the Commissioner's

decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991); *Jones*, 2011 WL 1706465, at *2 (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Windsor bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?

    (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
    (4) Is the claimant unable to perform his or her former occupation?
    (5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. DISCUSSION

**A.   Facts**

Windsor filed her applications for benefits on June 8, 2012, alleging a disability onset date of August 1, 2008 due to back injury, chronic kidney problems, anxiety, and depression. Docs. 15-2, 15-3 & 15-6. Windsor's claims were denied at the initial administrative level and on reconsideration. Docs. 15-2, 15-3 & 15-4.

Windsor requested and received a hearing before an Administrative Law Judge ("ALJ"). Doc. 15-4. After holding a hearing, the ALJ issued a written decision finding that Windsor had the severe impairments of lumbar disc disease, spondylosis, facet arthritis, osteopenia, thoracic neuritis, obesity, carpal tunnel syndrome, anxiety, and depression, but that none of those impairments or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 & 416.926).  Doc. 15-2 at 14–16.  The ALJ concluded that Windsor had the residual functional capacity ("RFC") to

> Perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  She can lift and carry no more than 10 pounds occasionally and 10 pounds frequently; can stand and walk four hours in an eight-hour workday; can sit up to six hours in an eight-hour workday; needs to alternate sitting and standing by sitting no more than one hour at a time with the ability to stand and stretch one to five minutes but not be off-task; can occasionally bend and reach overhead; can frequently handle, finger, and feel bilaterally; can wear a brace on each wrist as long as she can still have full dexterous use of her fingers for grasping; can never climb ladders, ropes, and scaffolds; can have no exposure to unprotected heights, dangerous equipment, and vibrations; can never be required to operate a commercial vehicle; can attend and concentrate for two hours at a time before needing a break; can adapt to occasional changes in work settings and routines; can understand, remember, and carry out short and simple work instructions; can make judgments regarding simple work-related decisions; can be accommodated for time off-task by normal breaks; can have no contact with the general public; can have occasional contact with coworkers and supervisors; and might miss up to one full day of work every two months.

Doc. 15-2 at 16.  Ultimately, based on the above, the ALJ concluded that Windsor was not disabled within the meaning of the Social Security Act and denied her applications. Doc. 15-2 at 22.

**B.    Issues Presented**

Windsor presents three issues for the court's review: (1) whether the ALJ erred by substituting her opinion for that of a medical professional by deciding the type of wrist split Windsor can wear for her carpal tunnel syndrome; (2) whether the ALJ's RFC assessment is inconsistent with her assignment of substantial weight to the opinion of Dr. Dale Leonard, resulting in either an improper rejection of a portion of Dr. Leonard's

opinion or an incomplete RFC assessment and an incomplete hypothetical to the vocational expert; and (3) whether the ALJ's finding regarding Windsor's ability to handle, finger, feel, and grasp is supported by substantial evidence.[2] Doc. 13.  After a careful review of the record, the court finds that the Commissioner's decision is due to be affirmed, as explained in greater detail below.

**C.     Analysis**

The first issue Windsor raises in her brief is whether the ALJ erred by substituting her own opinion for that of a medical professional by deciding the type of wrist splint Windsor can wear for her carpal tunnel syndrome. Doc. 13.  The ALJ's RFC assessment provides that Windsor "can wear a brace on each wrist as long as she can still have full dexterous use of her fingers for grasping." Doc. 15-2.  Windsor argues that this finding by the ALJ conflicts with the medical evidence because the type of wrist splint she was prescribed—a cock-up wrist splint—does not allow her to have full dexterous use of her fingers.  Therefore, Windsor argues that the ALJ improperly substituted her opinion for a medical professional's opinion by effectively deciding, through her RFC assessment, that Windsor can wear a wrist splint different from the type her doctors prescribed. Doc. 13.

The court finds Windsor's arguments on this issue unpersuasive.  Windsor contends there are three types of cock-up wrist splints but that none of them permit full dexterous use of her fingers.  The only evidence Windsor submits to support this contention, however, is a citation to a webpage offering a book for purchase,[3] and neither

---

[2] These are the issues as presented by Windsor in her brief. *See* Doc. 13 at 1.
[3] This book is *Essential Handbook of Practical Orthopaedic Examination* by Kaushik Bangergee. Doc. 13 at 6.

the court nor the Commissioner can readily access this information from the link Windsor provided in her brief. Docs. 13 & 14.  Moreover, even if the court did accept Windsor's argument that there are three types of cock-up wrist splints, she concedes that only one type—the long cock-up wrist splint—prevents finger flexion by holding the fingers in an extension position, and she does not allege that this is the specific type of splint she was prescribed. Doc. 13.  In fact, Windsor never specifies the type of cock-up wrist splint she was prescribed, and she has not pointed to any evidence in the medical records demonstrating that the type of wrist splint she either was prescribed or actually wears prevents her from having full dexterous use of her fingers, particularly for grasping.  In short, Windsor's argument that a certain type of cock-up wrist splint might limit her functioning, without evidence demonstrating that this is the type of wrist splint she either was prescribed or actually wears, is insufficient to warrant reversal of the ALJ's decision.

The second issue Windsor raises in her brief is whether the ALJ's RFC assessment is inconsistent with her assignment of substantial weight to the opinion of Dr. Dale Leonard, the State agency psychological consultant, resulting in either an improper rejection of a portion of his opinion or an incomplete RFC assessment and hypothetical to the vocational expert. Doc. 13.  Windsor argues that the ALJ erred by giving substantial weight to Dr. Leonard's opinion but then assessing her an RFC that is not fully consistent with his opinion in two ways: (1) Dr. Leonard's mental RFC provided that changes in Windsor's work environment or expectations should be infrequent and introduced gradually, while the ALJ's RFC assessment provided for occasional changes in work setting and routines; and (2) the ALJ's RFC does not account for Dr. Leonard's opinion

7

that Windsor would "function best" with a flexible daily scheduled in a well-spaced work setting. Docs. 13, 15-2 & 15-3. The court finds that Windsor's arguments do not merit reversal of the ALJ's decision.

 First, Dr. Leonard's opinion that Windsor should have infrequent changes in her work environment or expectations is not inconsistent with the ALJ's ultimate RFC assessment that Windsor should have only occasional changes in work settings and routines. The Social Security Administration defines "occasional" as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." Social Security Ruling 96-9p. On the other hand, the Administration defines "frequent" as "occurring from one-third to two-thirds of the time." Social Security Ruling 83-10. The Administration does not define "infrequent," but by implication infrequent must be less often than frequent—that is, occurring less than one-third of the time—a definition that overlaps with the definition of "occasional." Moreover, since Windsor has provided no rationale or substantive legal support to suggest that an occasional change is materially different from an infrequent change, the court is not persuaded that the ALJ's RFC assessment is inconsistent with Dr. Leonard's opinion in this regard.

 The same can be said for Dr. Leonard's opinion regarding Windsor's work schedule and setting. Dr. Leonard opined that Windsor would "function best" with a flexible daily schedule and a well-spaced work setting—not that she must have these allowances to be able to perform any work. The ALJ is not required to use magic words in the RFC determination, nor is she required to incorporate verbatim every suggestion or

limitation into her RFC determination.  Moreover, the ALJ was not required to adopt or to defer to every limitation in Dr. Leonard's assessment because RFC is a legal determination that is reserved for the Commissioner. *See Daniels v. Colvin*, 2015 WL 2095754, at *7 (M.D. Ala. May 5, 2015).  Accordingly, the court finds that the ALJ did not err in failing to address work schedules and settings in Windsor's RFC assessment.

The third and final issue raised by Windsor in her brief is whether the ALJ's finding regarding her ability to handle, finger, feel, and grasp is supported by substantial evidence. The ALJ's RFC assessment provides that Windsor "can frequently handle, finger, and feel bilaterally" and that she "can wear a brace on each wrist as long as she can still have full dexterous use of her fingers for grasping." Doc. 15-2.  In reaching this conclusion, the ALJ explained her reasoning:

> The claimant has been diagnosed with bilateral carpal tunnel syndrome since the alleged onset date (Exhibit 1F).  She has complained of dropping things frequently and finger numbness and decreased heat sensation (Exhibits 9F and 10F).  Her decreased bilateral grip strength, Tinel's and Phalen's signs showing mild discomfort related to the right wrist, and decreased sensation related to the thumb and first two fingers of the right hand have been noted on examination (4F and 9F).  However, her normal left upper extremity sensation, negative Tinel's and Phalen's signs related to the left wrist, normal bilateral wrist examination results, and ability to lift herself up from a chair have also been noted (Exhibits 9F and 10F).  She has been prescribed bilateral cock-up wrist splints and a finding of sedentary work activity accounts for any hand restriction she may have due to CTS or the splints.  Further, no evidence exists that CTS imposes any other hand or arm restriction (Exhibit 12F).

Doc. 15-2. Windsor challenges this conclusion by the ALJ for a number of reasons, none of which are sufficient to warrant a reversal of the ALJ's decision.

First, Windsor takes issue with the ALJ's citation to Exhibit 9F, which is Dr. Watson's consultative examination, as evidence that she had "normal bilateral wrist examination." Doc. 13. Windsor contends that this report shows the exact opposite conclusion because it documents that, during this examination, she had (1) limited strength testing because of pain in her right wrist; (2) she was wearing a brace across her right wrist; (3) she complained of numbness in her hands; (4) Tinel's and Phalen's signs revealed mild discomfort related to her right wrist; (5) sensory exam was decreased as to some fingers on her right hand; and (6) grip strength in her right hand was unmeasurable because of pain in her right wrist when squeezing. Docs. 13 & 15-8. However, as the Commissioner notes, the ALJ expressly acknowledged that Windsor had complained of dropping things frequently, finger numbness, and decreased heat sensation; that she had decreased bilateral grip strength; that Tinel's and Phalen's signs showed mild discomfort related to her right wrist; and that she had decreased sensation related to the thumb and first two fingers of her right hand. Docs. 13, 14 & 15-2. Moreover, the ALJ did not specifically state that Dr. Watson's consultative examination showed normal bilateral wrist examination. Rather, in noting that Windsor had normal bilateral wrist examination results, the ALJ cited to Dr. Watson's consultative examination (Exhibit 9F) and the medical records from Dr. Richard L. Bendinger from February 2011 to September 2012 (Exhibit 10F), which show that Windsor mainly complained of problems with her back and that Dr. Bendinger found on at least one occasion that Windsor's "wrists showed no abnormalities." Doc. 15-8.

Windsor also takes issue with the ALJ's reliance on Dr. Watson's observation that she can "lift her 168 pounds from the chair and walk across the room" as evidence that Windsor can frequently handle, finger, feel, and grasp. Docs. 13 & 15-8. While the ALJ agrees with Windsor that this observation was related mainly to the strength of her gluteus, quadriceps, and hamstring muscles rather than her ability to handle, finger, feel, and grasp—although the ability to lift up from a chair more often than not involves handling, fingering, feeling, and grasping—the court finds that the ALJ's reliance on this observation did not undermine or discredit the conclusion that Windsor can frequently handle, finger, feel, and grasp. Doc. 15-2.

Finally, Windsor takes issue with the ALJ's conclusion that "a finding of sedentary work activity accounts for any hand restriction she may have due to CTS or the splints." Docs. 13 & 15-2. Windsor argues that the "ALJ cites to no evidence that Ms. Windsor would be able to frequently handle, finger, and feel or have full dexterous use of her fingers when wearing a cock-up wrist splint" as prescribed. Doc. 13. However, Windsor has pointed to no competent evidence that she would not be able to frequently handle, finger, feel, and grasp, or have full dexterous use of her fingers when wearing a cock-up wrist splint as a result of her impairments.

In sum, after reviewing the entire record, and for the reasons explained in detail above, the court finds that proper legal standards were applied and that substantial evidence supports the ALJ's decision. *See Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999). The Commissioner's decision is due to be affirmed.

## IV.  CONCLUSION

Accordingly, it is ORDERED that the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this 27th day of March, 2017.

                                                          /s/ Gray M. Borden
                                      UNITED STATES MAGISTRATE JUDGE